## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **LORRAINE SCAMMAN,** | ) | |
| **THERESA CHARETTE,** | ) | |
| **DOROTHY RILEY,** | ) | |
| **PETER HARRIMAN, and** | ) | |
| **DEBORAH LINCOLN,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **2:15-cv-00295-JDL** |
| | ) | |
| | ) | |
| **SHAW'S SUPERMARKETS, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |

## CERTIFICATE OF QUESTION OF STATE LAW TO THE MAINE SUPREME JUDICIAL COURT SITTING AS THE LAW COURT

This case involves the following question of law of the State of Maine that may be determinative of the cause and for which there are no clear controlling precedents in the decisions of the Maine Supreme Judicial Court:

> Is a claim for disparate impact age discrimination under the Maine Human Rights Act, 5 M.R.S.A. § 4572(1)(A), evaluated under the "reasonable factor other than age" standard, *see Smith v. City of Jackson*, 544 U.S. 228 (2005); the "business necessity" standard, *see Maine Human Rights Comm'n v. City of Auburn*, 408 A.2d 1253 (1979); or some other standard?

The plaintiffs, Lorraine Scamman, Theresa Charette, Dorothy Riley, Peter Harriman, and Deborah Lincoln, are five former full-time employees of the defendant, Shaw's Supermarkets, Inc. ("Shaw's"). In November 2012, Shaw's terminated their employment as part of a reduction-in-force that it claims was necessary due to poor economic conditions. At the time of their termination, all of the plaintiffs were in

1

their fifties.[1]  They assert that Shaw's facially neutral reduction-in-force policy violated the Maine Human Rights Act ("MHRA"), 5 M.R.S.A. §§ 4551-4634 (2015), because it laid off only full-time employees who were disproportionately older than the part-time employees who were not laid off and who retained their jobs. Accordingly, the plaintiffs assert that the policy had a disparate impact on Shaw's older employees.  Plaintiffs seek to have their complaint certified as a class action.  A stipulated statement of facts showing the nature of the case and the circumstances out of which the question of law arose is attached as **Appendix A**.  *See* M.R. App. P. 25(b).

The parties disagree as to the legal standard that applies to plaintiffs' disparate impact age discrimination claim.[2]  Plaintiffs contend that the applicable standard is the "business necessity" standard, which applies in cases brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e-2000e-17 (2015).  They argue that the operative language of the MHRA, 5 M.R.S.A. § 4572(1)(A) (2015), is similar to the corresponding language of Title VII, 42 U.S.C.A. § 2000e-2(a)(1). Shaw's contends that the applicable standard is the "reasonable factor other than age"

---

[1] Paragraph 17 of the Complaint states in part that "[a]t the time of her termination, [Dorothy] Riley was 59 years old."  Complaint at 5, ¶ 17.  In its Answer, Shaw's denied all allegations contained in Paragraph 17.  Answer at 3, ¶ 17.  In a telephone conference with the court held on January 20, 2016, Shaw's stated that its denial of Riley's age was inadvertent. All parties now stipulate that Riley was 59 years old at the time of her termination on November 2, 2012.

[2] A hearing on the parties' joint motion for certification of the question was held on December 2, 2015, and the parties subsequently submitted a joint statement of stipulated facts, separate summaries of their respective positions, and a statement of the proposed question of law.  On January 20, 2016, the parties stipulated to and the court approved the certification of the question presented in this certification.

2

standard, which applies in cases brought under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.A. § 623(f)(1) (2015). Shaw's argues that this is the applicable standard for an age discrimination claim under the MHRA because Maine generally follows federal law when construing provisions of the MHRA that correspond to federal law. The plaintiffs' memorandum of law supporting their position regarding the certified question is attached as **Appendix B** and Shaw's memorandum of law supporting its position regarding the certified question is attached as **Appendix C**.

The question of law certified by this Order satisfies the criteria of M.R. App. P. 25(a). The answer to the question may be determinative of the cause and there are no clear controlling precedents in the decisions of the Maine Supreme Judicial Court. As recognized in *Dinan v. Alpha Networks, Inc.*, 2013 ME 22, ¶ 12, 60 A.3d 792 (quoting *White v. Edgar*, 320 A.2d 668, 675 (Me. 1974)), federal-state comity is promoted where "the state court of last resort [is] given opportunity to decide state law issues on which there are no state precedents which are controlling or clearly indicative of the developmental course of the state law." Accordingly, I respectfully submit this certification to the Maine Supreme Judicial Court pursuant to 4 M.R.S.A. § 57 (2015) and M.R. App. P. 25(a), and I suggest that the plaintiffs be treated as the appellants in the proceedings before the Maine Supreme Judicial Court.

The Clerk of this Court is **DIRECTED** to cause twelve (12) copies of this Order and the Appendices to be certified, under official seal, to the Maine Supreme Judicial Court sitting as the Law Court. It is further **ORDERED** that the Clerk of this Court

is authorized and directed to provide, without any costs to the Law Court, upon written request of the Chief Justice or the Clerk thereof, copies of any and all filings of the parties herein and of the docket entries pertaining to this case.

SO ORDERED.

Dated this 26th day of January, 2016.

/s/ Jon D. Levy
**U.S. DISTRICT JUDGE**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

Lorraine Scamman, Theresa Charrette, Dorothy Riley, Peter Harriman, and Deborah Lincoln, on behalf of themselves and all others similarly situated,

                Plaintiffs,

v.

Shaw's Supermarkets, Inc.,

                Defendant.

# APPENDIX A

Civil Action No.  2:15-cv-00295-JDL

## JOINT STATEMENT WITH STIPULATED FACTS

Defendant Shaw's Supermarkets, Inc. ("Defendant") and Plaintiffs Lorraine Scamman et al., on behalf of themselves and all others similarly situated ("Plaintiffs") (collectively the "Parties"), hereby jointly file this joint statement.

In support of their joint statement, the Parties state as follows:

## STIPULATED FACTS

### The Parties

1.      The Defendant is a grocery retailer operating in five New England states. As of November 2, 2012 the Defendant had approximately 18,000 employees.

2.      As of November 2, 2012, the Defendant's operations were divided into nine regional districts; District 4 included all of the Defendant's Maine store locations.

3.      The Plaintiffs were employed at the Defendant's locations in Maine on a full-time basis prior to November 2, 2012, when they were terminated as part of a reduction of force.

4.      Plaintiff Lorraine Scamman was born in March of 1957. She began working for the Defendant in the 1970s, while she was still in high school. She returned to the Defendant's employment in 1978 and worked for the company continuously for the next 34 years. During her 36 years of employment with the Defendant, Charrette worked at a variety of their locations, more recently as a full-time service desk/nonfood clerk in the Sanford, Maine store. She performed her job satisfactorily throughout her career with the Defendant.

5.      Plaintiff Theresa Charrette was born in July of 1956. She began working for the Defendant in the early 1970s. During her 31 years of employment with the Defendant, Charette worked in a number of store locations, most recently as a full-time bakery clerk in the Westbrook, Maine store. She performed her job satisfactorily throughout her career with the Defendant.

### The November 2, 2012, Reduction in Force

6.      On November 2, 2012, the Defendant implemented a reduction in force throughout its New England locations. On that date, the Defendant notified both Scamman and Charrette that their employment was terminated effective immediately.

7.      In selecting associates for termination in Maine, the Defendant implemented a policy excluding part-time employees from consideration for termination. Based on this policy, on November 2, 2012, the Defendant terminated sixty-six full-time employees in Maine as part of its reduction of force, including Scamman and Charrette.

8.      The Defendant did not terminate any part-time employees in Maine in the November 2, 2012 reduction of force.

2

9.      As of November 2, 2012, the Defendant's part-time employees in Maine were, on average, younger than the Defendant's full-time employees in Maine. As a result, the Defendant's specific policy of excluding part-time employees from consideration for termination caused the November 2, 2012, reduction of force to adversely affect a statistically significant higher proportion of older qualified employees, including Scamman and Charrette, as compared to younger qualified employees.

10.      As of November 2, 2012, the Defendant's part-time employees in Maine earned, on average, significantly less per hour than the Defendant's full-time employees in Maine, and worked, on average, significantly fewer hours per week than the Defendant's full-time employees.

11.      The Defendant states that it implemented the November 2, 2012, reduction of force because business imperatives made it necessary for it to cut costs by at least $550,000 per week, company-wide, and the reduction in force allowed it to do so.

### Procedural History

12.      On March 14, 2013, Plaintiffs Scamman and Charrette filed complaints of systemic age discrimination with the Maine Human Rights Commission and the Equal Employment Opportunity Commission against the Defendant on their own behalf and on behalf of all similarly situated individuals.

13.      On December 19, 2014, an investigator for the Maine Human Rights Commission recommended that the Commission find there were reasonable grounds to conclude that the Defendant had violated the Maine Human Rights Act ("MHRA") by discriminating on the basis of age under a disparate impact theory, but not under a disparate treatment theory.

3

14.    In recommending that the Commission find reasonable grounds to believe that unlawful discrimination on the basis of age occurred under a disparate impact theory, the investigator's report applied the three-step "business necessity" scheme adopted by Maine's Law Court under Subchapter 3 of the Maine Human Rights Act. *See Me. Human Rights Commission v. City of Auburn*, 408 A.2d 1253 (Me. 1979) (relying on *Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975) and *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971)). The investigator's report did not apply the two-step scheme applied under the United States Supreme Court's interpretation of the "reasonable factor other than age" ("RFOA") defense in Section 4(f)(1) of the Age Discrimination in Employment Act ("ADEA"). *See Smith v. City of Jackson,* 544 U.S. 228 (2005); *Meacham v. Knolls Atomic Power Lab.,* 554 U.S. 84 (2008).

15.    On January 26, 2015, the Commission adopted the investigator's analysis and determined that there were reasonable grounds to conclude the Defendant had discriminated against the Plaintiffs on the basis of age in violation of the MHRA under a disparate impact theory, but not under a disparate treatment theory.

16.    On May 18, 2015, the Plaintiffs filed a complaint in Androscoggin County Superior Court on behalf of themselves and all others similarly situated, alleging that the Defendant's implementation of the November 2, 2012, reduction in force constituted systemic age discrimination in violation of the MHRA.

17.    On July 27, 2015, Defendants filed a notice of removal on the grounds of diversity jurisdiction, removing the case from Androscoggin County Superior Court to the United States District Court for the District of Maine.

18.    On October 13, 2015, Plaintiffs and Defendant jointly requested certification to the Law Court of the question of whether the three-part business necessity scheme or the two-

4

part RFOA scheme applies to Plaintiffs' claim alleging age discrimination in violation of the

MHRA under a disparate impact theory.

### The "Business Necessity" and "RFOA" Schemes

19.     As articulated by the Law Court in *City of Auburn*, the business necessity analysis

establishes a three-step burden-shifting scheme. In the first step, the plaintiff must prove with

statistical evidence that an employer's practice, though facially neutral, affects a group of

individuals with a protected characteristic more adversely than individuals without that

characteristic, and that the plaintiff falls within the adversely impacted group. *See City of

Auburn*, 408 A.2d at 1264. If the plaintiff succeeds, then the burden shifts to the defendant to

produce "credible evidence" of a "job-related justification" for its practices that is consistent

with business necessity, not "mere business convenience." *Id*. If the defendant succeeds, the

analysis then proceeds to the third step, at which the plaintiff may prevail by proving either: (1)

that the Defendants' justification does not constitute a business necessity; or (2) that alternative

practices, with a less discriminatory effect, would also meet those business needs. *See id*. at

1268.

20.     As interpreted by the U.S. Supreme Court in *Smith v. City of Jackson*, 544 U.S.

228 (2005) and *Meacham v. Knolls Atomic Power Laboratory.*, 554 U.S. 84 (2008), the presence

of the RFOA defense in the text of the ADEA supplants the three-step business necessity scheme

with a two-step RFOA scheme. In the first step of the RFOA scheme, as under the business

necessity scheme, the plaintiff must prove with statistical evidence that an employer's practice,

though facially neutral, affects a group of individuals with a protected characteristic more

adversely than individuals without that characteristic and that the Plaintiff falls within the

5

adversely impacted group. *See City of Jackson*, 544 U.S. at 239. If the plaintiff succeeds, then the burden of production shifts to the defendant to establish: (1) that the challenged practice is based on a factor other than age; (2) that the defendant's reason for relying on that factor is a legitimate interest of the defendant's business; and (3) that the practice is reasonably related to pursuing that interest. *See id.* at 243; 29 C.F.R. § 1625.7(e)(1). The two-step RFOA scheme does not call for analysis of whether the defendant's actions were compelled by business necessity or whether the defendant could have used alternative employment practices with a less discriminatory effect to meet its business needs. *Meacham*, 554 U.S. at 97-100; *City of Jackson*, 544 U.S. at 243.

### Application of the Business Necessity and RFOA Schemes to the Stipulated Facts

21.     Plaintiffs are pursuing their MHRA age discrimination claim under only a disparate impact theory, not a disparate treatment theory.

22.     Under the first step of either the three-step business necessity scheme or the two-step RFOA scheme, the Plaintiffs can meet their initial burden.

23.     If the RFOA defense applies to age discrimination claims brought pursuant to the MHRA under a disparate impact theory, then the Plaintiffs concede that the Defendant is entitled to judgment as a matter of law on the claims against it. The basis for Plaintiffs' concession is as follows: (1) the part-time/full-time factor the Defendant relied on to select associates for termination in the November 2, 2012 reduction of force is distinct from age, despite its strong correlation with age; (2) reducing operation costs is a legitimate interest of the Defendant's business; and (3) excluding part-time employees from the November 2, 2012 reduction of force was reasonably related to the  Defendant's goal of reducing operation costs, given that part-time employees, on average, were paid a lower hourly rate and worked fewer hours per week.

6

24.     If the RFOA defense does not apply to age discrimination claims brought

pursuant to the MHRA under a disparate impact theory and the business necessity scheme

applies instead, then further discovery would be necessary to determine whether Plaintiffs can

prevail on their claim. In particular, discovery would be required to determine if there are

genuine issues of material fact as to: (1) whether the November 2, 2012 reduction of force was

truly compelled by business necessity; and (2) if so, whether there are alternative practices with a

less discriminatory effect that would have met those same business needs.


Dated:  January 8, 2015                      Respectfully submitted,


                                             */s/ Jeffrey Neil Young*
                                             Jeffrey Neil Young
                                             Carol J. Garvan
                                             JOHNSON, WEBBERT & YOUNG, LLP
                                             160 Capitol St., Suite 3
                                             Augusta, ME 04332
                                             Telephone:  (207) 623-5110
                                             Email:  jyoung@johnsonwebbert.com
                                             Email:  cgarvan@johnsonwebbert.com
                                             *Attorneys for Plaintiffs*


                                             /s/ K. Joshua Scott
                                             K. Joshua Scott
                                             Martha Van Oot
                                             JACKSON LEWIS P.C.
                                             100 International Drive, Suite 363
                                             Portsmouth, NH 03801
                                             603.559.2700
                                             joshua.scott@jacksonlewis.com
                                             martha.vanoot@jacksonlewis.com
                                             *Attorneys for Defendant*

### Certificate of Service

I, Jeffrey Neil Young, hereby certify that on January 8, 2016, I electronically filed this filing with the Clerk of the Court using the CM/ECF system which will send notification of such filings to the following counsel for Defendant:  K. Joshua Scott, Esq. at Joshua.scott@jacksonlewis.com and Martha Van Oot at Martha.vanoot@jacksonlewis.com.

*/s/ Jeffrey Neil Young*
Jeffrey Neil Young

United States District Court
District Of Main

| | | |
|---|---|---|
| Lorraine Scamman, *et al.* | ) | **APPENDIX B** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 2:15-cv-00295 |
| v. | ) | |
| | ) | |
| Shaw's Supermarkets, Inc. | ) | |
| | ) | |
| Defendant. | ) | |

### Plaintiffs' Memorandum Of Points And Authorities Supporting Certification

Plaintiffs, Lorraine Scamman et al., and Defendant, Shaw's Supermarkets, Inc. ("Shaw's"), jointly requested that this Court certify to the Maine Supreme Judicial Court sitting as the Law Court the question of what standard of proof applies in a disparate impact age discrimination claim under the Maine Human Rights Act (MHRA). (ECF No. 16). Pursuant to the Court's order of December 2, 2015 (ECF No. 19), following oral argument the parties conferred regarding the wording of the question for certification and hereby jointly request certification of the following question:

### Question For Certification

Whether Plaintiffs' claims for disparate impact age discrimination under the Maine Human Rights Act should be evaluated under the "reasonable factor other than age" analysis enunciated by the Supreme Court in *Smith v. City of Jackson,* the "business necessity" analysis

promulgated by the Law Court in *Maine Human Rights Comm'n v. City of Auburn*, or some other analysis?

Pursuant to this Court's order of December 2, 2015 (ECF No. 19), Plaintiffs submit this summary of their position on the question for certification.  Plaintiffs contend that disparate impact claims on the basis of age under the MHRA should be analyzed under the three-step "business necessity" scheme applied to Title VII disparate impact claims and adopted by the Law Court in *Maine Human Rights Commission v. City of Auburn*, 408 A.2d 1253 (1979),[1] not the two-step "reasonable factors other than age" ("RFOA") scheme applied to ADEA disparate impact claims.[2]

The plain language of the MHRA, the relevant case law, the applicable regulations interpreting the MHRA, and the MHRC's decision in this case all

---

[1]      Under the business necessity scheme, the plaintiff must first prove with statistical evidence that an employer's practice, though facially neutral, affects a group of individuals with a protected characteristic more adversely than individuals without that characteristic, and that the plaintiff falls within the adversely impacted group. *See City of Auburn*, 408 A.2d at 1264. If the plaintiff succeeds, then the burden shifts to the defendant to produce "credible evidence" of a "job-related justification" for its practices that is consistent with business necessity, not "mere business convenience." *Id.* If the defendant succeeds, the analysis then proceeds to the third step, at which the plaintiff may prevail by proving either: (1) that the defendant's justification does not constitute a business necessity; or (2) that alternative practices, with a less discriminatory effect, would also meet the defendant's business needs. *See id.* at 1268.

[2]      Under the RFOA scheme, the first step, requiring statistical proof of an adverse impact, is the same as under the business necessity scheme. *See Smith v. City of Jackson*, 544 U.S. 228, 239 (2005). However, if the plaintiff succeeds, the burden of proof shifts to the defendant, who can prevail by proving (1) that the challenged practice is based on a factor other than age; (2) that the defendant's reason for relying on that factor is a legitimate interest of the defendant's business; and (3) that the practice is reasonably related to pursuing that interest. *See id.* at 243; 29 C.F.R. § 1625.7(e)(1). This scheme does not call for analysis of whether the defendant's actions were compelled by business necessity or whether the defendant could have used alternative employment practices with a less discriminatory effect to meet its business needs. *Meacham*, 554 U.S. 84, 97-100 (2008); *City of Jackson*, 544 U.S. at 243.

support Plaintiffs' position. First, the text of the MHRA was patterned after the statutory language of Title VII from which the U.S. Supreme Court derived the three-step "business necessity" scheme; the text of the MHRA is markedly different from the ADEA, which expressly contains an RFOA defense entirely absent from the MHRA. Second, the Law Court and this Court repeatedly have refused to follow federal law in interpreting Maine law where the statutory language differs. Third, the leading Law Court precedent, *Maine Human Rights Commission v. City of Auburn*, applied the three-part business necessity scheme to analyze a disparate impact claim under the MHRA. Fourth, the Maine Human Rights Commission's applicable regulations on disparate impact claims rely on the Supreme Court's decision in *Griggs v. Duke Power*,[3] which applies the three-step business necessity scheme, not the RFOA defense. Fifth, in this case, the MHRC applied the three-part business necessity scheme in reliance on *City of Auburn* and the MHRA regulations, and the Commission's analysis of the statute is entitled to deference.

**First,** the text of the MHRA was patterned after Title VII, from which the U.S. Supreme Court judicially derived the three-step "business necessity" burden-shifting scheme. *Griggs v. Duke Power Company*, 401 U.S. 424

---

[3] *Griggs v. Duke Power Company*, 401 U.S. 424 (1971).

(1971); *Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975).[4] Title VII offers protection against employment discrimination "because of . . . race, color, religion, sex, or national origin" 42 U.S.C. § 2000e-2(a). The MHRA offers protection against employment discrimination "because of race or color, sex, sexual orientation, physical or mental disability, religion, age, ancestry or national origin." 5 M.R.S.A. § 4572(1)(A). In enacting the MHRA's substantive provisions, the Maine Legislature simply adopted language similar to Title VII and added "age" to the list of protected characteristics, indicating it intended "age" to be analyzed under the same framework as the other protected categories unless the statute expressly provided otherwise.

By contrast, in addressing age discrimination, Congress did not simply add "age" to Title VII's list of protected categories, but instead enacted an entirely separate law, the ADEA. Section 4(f) of the ADEA expressly and affirmatively permits any action "otherwise prohibited" "where the differentiation is based on reasonable factors other than age." 29 U.S.C. §623(f)(1). This statutory "RFOA" defense is entirely absent from the MHRA.

---

[4]      The current text of Title VII includes a provision, 42 U.S.C. § 2000e-2(k), that uses the phrase "business necessity" and delineates the burden-shifting scheme applicable in Title VII disparate impact cases. That provision did not appear in Title VII until the passage of the Civil Rights Act of 1991, which codified the disparate impact principles the U.S. Supreme Court had earlier derived from Title VII's original text in *Griggs* and subsequent cases. *See* Barbara T. Lindemann, Paul Grossman, and C. Geoffrey Weirich, *Employment Discrimination Law* § 3.I at 3-2 (5th ed. 2012). Moreover, that 1991 amendment was enacted well after the MHRA and after the Law Court's decision in *City of Auburn*, which applied the business necessity scheme to disparate impact claims under the MHRA.

**Second**, while Maine applies federal precedent where the relevant statutory language is similar, both the Law Court and this Court have recognized that Maine discrimination and employment statutes must be interpreted differently where, as here, the statutory text differs. *See, e.g., Whitney v Wal-mart Stores, Inc.,* 2006 ME 37, 895 A.2d 309 (refusing to apply requirement under Americans with Disabilities Act that employee show impairment "substantially limit" major life activity to MHRA claim where no analogous requirement appeared in text of MHRA); *Warren v. United Parcel Serv.,* 495 F. Supp. 2d 86 (D. Me. 2007), *aff'd,* 518 F.3d 93 (1st Cir. 2008) (refusing to adopt interpretation of ADA requiring that employee prove disability posed a direct threat and instead placing burden under MHRA on employer); *Me. Human Rights Comm'n v. Kennebec Water Co.,* 468 A.2d 307 (Me. 1983) (rejecting argument that MHRA like ADEA only should protect individuals age 40 and over against age discrimination in absence of language in MHRA to that effect); *Affo v. Granite Bay Care, Inc.,* 2:11-cv-482-DBH & 2:12-cv-115-DBH, 2013 WL 2383627, 2013 U.S. Dist. LEXIS 76019 (D. Me. May 30, 2013) (finding that  individuals are not personally liable under Maine law for wage and hour violations unlike under Fair Labor Standards Act because of differences in statutory definition of word "employer"); *Brown v E. Me. Med. Ctr.,* 2006 WL 2061398, 2006 U.S. Dist. LEXIS 50593 (D. Me 2006) (refusing to import right to intermittent leave

5

under Maine Family Medical Leave Act despite such protection under federal Family Medical Leave Act). In *Kennebec Water Power,* which, as in the case at bar, involved an age discrimination claim, the Law Court declared that "where the provisions of the Maine statute differ substantively from their federal counterparts, as is the case here, deference to construction of the federal version is unwarranted." 468 A.2d at 310. And, in *Brown,* this Court similarly stated, "the Maine Law Court has also made it clear that, where the language of the federal act and the state act differ substantially, deference to federal construction is unwarranted." 2006 U.S. Dist. LEXIS 50593 at *10.

**Third**, the leading Law Court precedent addressing disparate impact claims under the MHRA applies the business necessity test. *See City of Auburn*, 408 A.2d at 1265 (applying the business necessity test to a disparate impact sex-discrimination claim brought under MHRA, relying upon the Supreme Court's decision in *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971)). To Plaintiffs' knowledge, neither the Law Court nor any other court in the state of Maine has ever applied the RFOA standard to a disparate impact claim under the MHRA.

**Fourth**, the Maine Human Rights Commission's regulations in effect at the time of Shaw's 2012 reduction-in-force provided that for purposes of disparate impact analysis under the MHRA, the business necessity standard, first announced in *Griggs*, applied. The Commission's regulations stated:

6

3.02   DEFINITIONS

    A.    Unlawful Discrimination

        (1)    As in the Maine Human Rights Act.

        (2)    The Commission interprets the term, "unlawful employment discrimination," as defined in the Act, to encompass three concepts:

* * * *

        c.    Disparate Impact - conduct which, although applied equally to all, has an adverse effect on membership of a protected class as compared to the effect on members of the majority class; in other words, practices fair in form but discriminatory in operation. Intent or motive is of no consequence. See *Griggs v. Duke Power Company*, 401 U.S. 424, 91 S.Ct. 849, 3 FEP Cases 175 (1971).

11 C.M.R. 94 348 003-2, §3.02 (A)(2)(C), attached as Exhibit A.

**Fifth and finally,** in evaluating the employees' disparate impact claims in this case, the MHRC adopted the three-part business necessity scheme set forth in *City of Auburn, Griggs*, and the MHRC's own regulations. The MHRC Investigator's Report declared: "At the final stage of the analysis, even if Respondent is able to show a business necessity for its challenged practice, 'there may be affirmative evidence that other selection devices … would also assure … effective work performance." MHRC Investigator's Report, p. 7 (ECF No. 1-3, filed 7/27/15). The Commission unanimously adopted the analysis in the Investigator's Report. *See* Joint Stipulation of Facts, ¶ 15. The Commission's analysis of the disparate impact claims in the

7

case at bar are entitled to deference, as the MHRC is the agency charged with interpreting the MHRA.

For these reasons, as well as those articulated at oral argument and delineated in the joint motion to certify, Plaintiffs respectfully request that this Court certify the question set forth above to the Law Court.

Dated: January 8, 2016                     Respectfully submitted,


                                            */s/ Jeffrey Neil Young*
                                            Jeffrey Neil Young
                                            Carol J. Garvan
                                            JOHNSON, WEBBERT & YOUNG, LLP
                                            160 Capitol St., Suite 3
                                            Augusta, ME 04332
                                            Telephone: (207) 623-5110
                                            Email: jyoung@johnsonwebbert.com
                                            Email: cgarvan@johnsonwebbert.com
                                            *Attorneys for Plaintiffs*

## Certificate of Service

I, Jeffrey Neil Young, hereby certify that on January 8, 2016, I electronically filed this filing with the Clerk of the Court using the CM/ECF system which will send notification of such filings to the following counsel for Defendant: K. Joshua Scott, Esq. at Joshua.scott@jacksonlewis.com and Martha Van Oot at Martha.vanoot@jacksonlewis.com.

*/s/ Jeffrey Neil Young*
Jeffrey Neil Young

**EXHIBIT A**

94-348      MAINE HUMAN RIGHTS COMMISSION

Chapter 3:      EMPLOYMENT REGULATIONS OF THE MAINE HUMAN RIGHTS
                COMMISSION

---

## 3.01   GENERALLY

### A.   Purpose

Pursuant to Title 5 M.R.S.A., §4566(7), the Maine Human Rights Commission has
adopted the following regulations which are designed to inform employers, labor
organizations, employment agencies, and other interested parties of the Commission's
interpretation of the Maine Human Rights Act, Title 5 M.R.S.A., §4551, *et seq.*,
hereinafter referred to as "the Act".

### B.   Effect

These regulations shall be accorded the full force and effect of interpretative
administrative regulations.

### C.   Construction

(1)   Consistent with the public policy underlying the Act (as expressed in §4552),
      and with firmly established principles for the interpretation of such humanitarian
      legislation, the remedial provisions of the Act shall be given broad construction
      and its exceptions shall be construed narrowly.

(2)   The provisions of these regulations are severable. If any provision or the
      application of any provision of these regulations to any person or circumstances
      is invalid, such invalidity shall not affect other provisions or applications which
      can be given effect without the invalid provision or application.

## 3.02   DEFINITIONS

### A.   Unlawful Discrimination

(1)   As in the Maine Human Rights Act.

(2)   The Commission interprets the term, "unlawful employment discrimination," as
      defined in the Act, to encompass three concepts:

      a.   Overt Discrimination - an intentional, purposeful act of discrimination;

      b.   Unequal or Disparate Treatment - treating members of a protected class
           in a different and less favorable manner than members of the similarly
           situated majority group. Proof of discriminatory motive is required;

      c.     Disparate Impact - conduct which, although applied equally to all, has an adverse effect on membership of a protected class as compared to the effect on members of the majority class; in other words, practices fair in form but discriminatory in operation. Intent or motive is of no consequence. See Griggs v. Duke Power Company, 401, U.S. 424, 91S. CT. 849, 3 FEP Cases 175 (1971).

    (3)     A prima facie case of discrimination exists if the complainant establishes that membership in a protected class, even though not the sole factor, was nonetheless a substantial factor motivating the employer's conduct. If the complainant would not have been rejected, discharged or otherwise treated differently, but for membership in the protected class, the existence of other reasonable grounds for the employer's action does not relieve the employer from liability. Wells v. Franklin Broadcasting Corp., 403 A 2d 771, 20 FEP Cases 548 (1979).

**B.**   **Tests**

The word "test" means all employee selection procedures used to make employment decisions. Employee selection procedures include the evaluation of applicants, candidates or employees on the basis of stated minimum and preferred job qualifications, application forms, interviews, performance examinations, paper and pencil examinations, performance in training programs or probationary periods and any other procedures used to make an employment decision whether administered by an employer, employment agency, labor organization, licensing or certification board or apprenticeship committee.

Employment decisions include, but are not limited to hiring, promotion, demotion, membership in a labor organization, referral, retention, licensing, certification and membership in an apprenticeship program.

**C.**   **Sexual Orientation**

    (1)     The term "sexual orientation" means a person's actual or perceived heterosexuality, bisexuality, homosexuality, gender identity, or gender expression.

    (2)     The term "gender identity" means an individual's gender-related identity, whether or not that identity is different from that traditionally associated with that individual's assigned sex at birth, including, but not limited to, a gender identity that is transgender or androgynous.

    (3)     The term "gender expression" means the manner in which an individual's gender identity is expressed, including, but not limited to, through dress, appearance, manner, speech, or lifestyle, whether or not that expression is different from that traditionally associated with that individual's assigned sex at birth.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

|  |  |
|---|---|
| Lorraine Scamman, Theresa Charette, Dorothy Riley, Peter Harriman, and Deborah Lincoln, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs<br><br>v.<br><br>Shaw's Supermarkets, Inc.<br><br>                    Defendant | **APPENDIX C**<br><br><br>Civil Action No. 2:15-cv-00295-JDL |

## DEFENDANT'S MEMORANDUM REGARDING THE APPLICABILITY OF THE REASONABLE FACTOR OTHER THAN AGE ANALYSIS

Defendant Shaw's Supermarkets, Inc. ("Defendant"), by and through counsel, Jackson Lewis, P.C., hereby states its argument in support of the application of the reasonable factor other than age analysis to a claim of disparate impact on the basis of age under the Maine Human Rights Act pursuant to the Court's Order of December 2, 2015. In support, Defendant states as follows:

Under the Age Discrimination in Employment Act ("ADEA") it is unlawful for an employer "to limit, segregate, or classify its employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee because of an employee's age." 29 U.S.C. § 623(a)(2). Pursuant to this clause, facially neutral employment practices that have a disparate impact on age are prohibited. *Meachem v. Knolls Atomic Power Lab*, 554 U.S. 84, 95-96 (2008). Once a plaintiff establishes a *prima facie* case of discrimination, the employer can rebut the inference of discrimination by asserting the neutral policy was based on a reasonable factor other than age ("RFOA"). *Id.*

1

Unlike Title VII, the ADEA disparate impact claims are subject to the RFOA analysis and does not permit rebuttal that other reasonable methods not resulting in a disparate impact were available. *Smith v. City of Jackson, Mississippi*, 544 U.S. 228, 243 (2005) (stating that unlike the business necessity test under Title VII, the reasonableness inquiry does not require an employer determine ways to achieve its goals without the disparate impact). In *Smith*, the Supreme Court observed that though there may have been other reasonable ways for the employer to achieve its goals, the one selected was not unreasonable. *Id.*

The business necessity test and reasonable factor than age analysis differ significantly. The business necessity test under Title VII is three step process whereby the plaintiff must prove that an employer's practice affects employees in a protected class more adversely than employees not within the protected class. If successful, the defendant must show evidence that its practices are due to a business necessity. The burden then shifts back to the plaintiff to prove that either the defendant's reason(s) for its actions did not constitute a business necessity or there were alternative practices that would have meet the employer's needs without the discriminatory impact. *See Maine Human Rights Commission v. City of Auburn*, 408 A.2d 1253 (1979).

Unlike the business necessity test, the RFOA analysis does not require a showing that the employer's practice was compelled by a business necessity or if the employer could have utilized an different method of achieving the desired result with a less discriminatory effect. *See Smith*, 544 U.S. at 243; *Meachem*, 554 U.S. at 97-100.

The United Supreme Court recognized that "[c]ourts are generally less competent than employers to restructure business practices and unless mandated by Congress they should not attempt it." *Watson v. Fort Worth Bank*, 487 U.S. 977, 999 (1988) (superseded on other grounds). "The ADEA was not intended to be a vehicle for judicial second guessing of business

2

decisions, nor was it intended to transform the courts into personnel managers." *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 123 (5th Cir. 1992).

The Law Court interprets the Maine Human Rights Act ("MHRA"), to the extent possible, in the same manner as its federal statutory counterparts. *French v. Bath Iron Works Corp.*, 45 F. Supp. 2d 69, 72 (D. Me. 1999). As the Law Court stated "to the extent that there exists an identity of purpose and objectives as between the Maine and federal provisions, reference to the latter in construing the former is entirely appropriate." *Maine Human Rights Commission v. Kennebec Water Power Co.*, 468 A.2d 307, 310 (Me. 1983). When determining whether a plaintiff may recover under the MHRA, the Law Court has consistently referred to cases interpreting the ADEA. *See Winston v. Maine Technical College System*, 631 A.2d 70, 74074 (Me. 1993); *Percy v. Allen*, 449 A.2d 337, 342 (Me. 1982); *Maine Human Rights Commission v. City of Auburn*, 408 A.2d 1253 (Me. 1979).

The only time the Law Court has declined to apply the interpretation of the ADEA to the MHRA was when the language of the ADEA and MHRA conflicted. *Maine Human Rights Commission v. Kennebec Water Power Co.*, 468 A.2d 307 (Me. 1983). In *Kennebec Water Power Co.*, the Law Court affirmed the general rule of referencing the ADEA when interpreting the MHRA and stated "to the extent that there exists an identity of purpose and objectives as between the Maine and federal provisions, reference to the latter in construing the former is entirely appropriate." *Id.* at 310. But, the Law Court held that because the clear language of the MHRA, specifically 5 M.R.S.A § 4574, stated the provision of the statute dealing with age discrimination applied to "any person" and was not limited to those over the age of 40 as in the ADEA, the federal statute would not limit the rights and remedies under the MHRA. *Id.* This was particularly true where the Law Court's interpretation of the MHRA was "completely

3

consistent with the federal law's purpose to neutralize age as a factor, and discourage stereotyped views of the respective abilities and qualifications of workers of particular ages." *Id.* at 311.

Here, unlike the language at issue in *Kennebec Water Power Co.*, the MHRA is silent on the issue of a disparate impact claim and the proper analysis to utilize when evaluating such a claim. *See* 5 M.R.S.A § 4571 *et. seq.* In the past, when interpreting the MHRA where its language is silent, the courts have used the interpretation of the ADEA to aid their analysis. For example, prior to the Supreme Court's rulings in *Jackson* and *Meachem*, the United States District Court for the District of Maine determined that no disparate impact claim for age discrimination under the MHRA existed as the First Circuit did not recognize such a claim under the ADEA. *French*, 45 F.Supp.2d at 74. Similar to *French*, the MHRA is silent on the issue of the proper analysis to review a disparate impact claim and thus the courts should look to their federal statutory interpretation to aid in their interpretation.

Based on the foregoing, the Defendant requests this Court to certify the question of the proper method to analyze a disparate impact claim based on age discrimination under the MHRA to the Law Court.

Dated:  January 8, 2016                     Respectfully submitted,

                                            /s/ K. Joshua Scott
                                            K. Joshua Scott ME Bar 005282
                                            Martha Van Oot (admitted *Pro Hac Vice*)
                                            JACKSON LEWIS P.C.
                                            100 International Drive, Suite 363
                                            Portsmouth, NH 03801
                                            603.559.2700
                                            joshua.scott@jacksonlewis.com
                                            martha.vanoot@jacksonlewis.com
                                            *Attorneys for Defendant*

Certificate of Service

I hereby certify that the foregoing was served via ECF on counsel for Plaintiffs.

Date:   January 8, 2016                    By:    /s/ K. Joshua Scott
                                                  K. Joshua Scott

4847-5554-3084, v. 1

5